**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

---

**In re: CCA Recordings 2255 Litigation**,
                            **Petitioners,**

**v.**                                        **Case No. 19-cv-2491-JAR-JPO**

                                        **(This Document Relates to Case No. 13-
                                        cr-20081-JAR-1, *United States v. Arrick
                                        M. Warren*, and Case No. 19-2220-JAR,
                                        *Arrick M. Warren v. United States*)**

**United States of America.**
                            **Respondent.**

---

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Arrick Warren's Supplemental Motion to

Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 129).[1]  Petitioner alleges the

government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to

his attorney-client communications, and asks the Court to reject the government's request to

dismiss this action on procedural grounds and find that he has made a sufficient showing to

warrant an evidentiary hearing.  As a remedy, he asks the Court to vacate his judgment with

prejudice to refiling or alternatively, to reduce his custodial sentence by approximately 50% and

vacate his term of supervised release. The matter is fully briefed, and the Court is prepared to

rule.  For the reasons explained in detail below, the Court dismisses Petitioner's challenge to his

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, No. 13-20081-JAR-1.  Citations prefaced with "*CCA Rec. Lit.* Doc." Refer to filings and entries in this consolidated case, No. 19-cv-2491-JAR-JPO.  With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in Case No. 16-20032-JAR are prefaced with "*Black*, Doc."

conviction. Petitioner's challenge to his sentence, including any term of supervised release, is denied without an evidentiary hearing. Petitioner is also denied a certificate of appealability.

## I.      Background

### A.      Procedural History

Petitioner was charged in a Second Superseding Indictment with two counts of distributing cocaine base within 1,000 feet of a playground (Counts 1 and 2); possessing with intent to distribute cocaine base within 1,000 feet of a playground (Count 3); and maintaining a drug-involved premises (Count 4).[2] When Petitioner committed the offenses, he was serving a term of supervised release on a prior conviction in Iowa for offenses related to the distribution of cocaine base.

Petitioner was detained at Corrections Corporation of America ("CCA") from June 26, 2013 through January 15, 2015. He was represented by Dionne Scherff and Jackie Rokusek in the underlying criminal proceedings.

On January 24, 2014, Petitioner pleaded guilty with no agreement to the four charged counts.[3] Based on a total offense level of 35 and a criminal history category of III, the Presentence Investigation Report ("PSIR") calculated Petitioner's applicable Guidelines range at 210 to 262 months' imprisonment.[4] Relevant here, Petitioner's base offense level was calculated at 38 because the offense involved 728 grams of cocaine base, plus two levels because the offense was committed within 1,000 feet of a protected location, plus an additional two levels because a firearm was possessed, and an additional two levels because Petitioner maintained a

---

[2] Doc. 52.

[3] Doc. 59.

[4] Doc. 62 ¶ 107.

premises for the purpose of manufacturing or distributing a controlled substance.[5]  Petitioner also received a three-level reduction for acceptance of responsibility.[6]  Petitioner filed two objections to the PSIR: (1) the calculation to the amount of illegal drugs by conversion of the cocaine powder to cocaine base; and (2) the gun enhancement based on Petitioner's possession of the firearm.[7]  The government filed a sentencing memorandum requesting a sentence of 210 months' imprisonment to be imposed consecutively to a sentence of 60 months' imprisonment in the earlier case.[8]  Petitioner also filed a sentencing memorandum challenging the firearm enhancement and drug quantity in the PSIR and requesting a sentence within the range of 87 to 120 months.[9]

After an evidentiary hearing focusing on the drug quantity and firearms issues, Judge Carlos Murguia adjusted the total offense level from 35 to 33, which resulted in an advisory Guidelines range of 168 to 210 months, and sentenced Petitioner to 180 months' imprisonment on all four counts followed by six years of supervised release.[10]  For violating his release conditions in the earlier case, the court revoked Petitioner's supervised release and sentenced him to 36 months' imprisonment, to be served consecutively to the 180-month sentence.  The government dismissed the Indictment and Superseding Indictment, which included counts with a mandatory consecutive minimum term of five years' to life imprisonment, and a mandatory minimum term of five years' to 40 years' imprisonment.[11]

---

[5] *Id.* ¶¶ 48–51.

[6] *Id.* ¶¶ 58–59.

[7] *Id.* at ¶¶ 24–28.

[8] Doc. 72.

[9] Doc. 68.

[10] Doc. 82.

[11] *Id.*; *see also* Doc. 15 at 9–10; Doc. 23 at 3–4, 10; 18 U.S.C. §§ 924(c)(1)(A); 21 U.S.C. §§ 841(a), (b)(1)(B).

Petitioner filed a direct appeal, and the Tenth Circuit affirmed his sentences.[12]   The Supreme Court denied his petition for writ of certiorari on June 6, 2016.[13]

On June 8, 2017, Petitioner filed a *pro se* motion to vacate his sentence under 28 U.S.C. § 2255 on grounds that defense counsel was ineffective because she did not inform him of the possibility of several sentencing enhancements and drug quantity calculation issues before he entered a plea of guilty.[14]   Judge Murguia denied the motion on April 17, 2019, finding that trial counsel's performance met the standard of reasonableness.[15]

The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in his § 2255 proceedings on July 17, 2018.[16]   On May 9, 2019, the FPD filed this Supplemental § 2255 motion on Petitioner's behalf, setting forth a single ground for relief: the government violated the Sixth Amendment by intentionally and unjustifiably intruding into his attorney-client communications.   The government opposed supplementing the motion.[17]   On June 10, 2019, Petitioner appealed the court's denial of his original motion to vacate.[18]   Judge Murguia then granted Petitioner's request to supplement, and reopened the motion to vacate to allow defendant to file his Sixth Amendment intentional intrusion claim.[19]   The appeal was then dismissed by the Tenth Circuit on July 29, 2019.[20]   Petitioner's release date is October 26, 2028.

---

[12] *United States v. Warren*, 636 F. App'x 450 (10th Cir. 2016).

[13] Doc. 102.

[14] Docs. 103, 104.

[15] Doc. 126.

[16] Standing Order 18-3.

[17] Doc. 130.

[18] Doc. 132.

[19] Doc. 136.   The criminal proceedings were reassigned to the undersigned after Judge Murguia resigned from the bench.   Doc. 138.

[20] Doc. 137.

B.    **The *Black* Investigation and Order**

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motion before the Court.  That comprehensive opinion was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein.  The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events documented in the *Black* case and investigation, which included audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA.  On August 13, 2019, the Court issued the *Black* Order, which addressed, *inter alia*, the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[21]  The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit's decision in *Shillinger v. Haworth*,[22] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[23]  Once those elements are established, prejudice is presumed.[24]

---

[21] *Black* Order at 145–62.

[22] 70 F.3d 1132 (10th Cir. 1995).

[23] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[24] *Id.*

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[25]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the telephone recording exists, and (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client.[26]  This threshold showing requires an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[27]

### C.     Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[28]  It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties.  Like the *Black* Order, the Court assumes the reader is familiar with the proceedings in the consolidated master case that precipitates the matter before the Court, and does not restate the underlying facts

---

[25] *Id.* at 163.

[26] *Id.* at 166.

[27] *Id.*

[28] *CCA Rec. Lit.*, Doc. 1.

in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Relevant here, on January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-waiver-by-plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[29]  Specifically, the Court ruled that three petitioners in this consolidated litigation who proceeded to trial in their underlying criminal proceedings are entitled to evidentiary hearings on their audio recording Sixth Amendment claims.  Second, the Court determined that the rule in *Tollett v. Henderson* procedurally barred petitioners who alleged pre-plea Sixth Amendment violations from advancing those claims.[30]  Third, the Court determined that approximately twenty petitioners lacked standing to advance their Sixth Amendment claims for various reasons, including: claims that alleged post-sentencing violations; claims where petitioners who had been deported challenged only their sentence; claims where petitioners challenging their sentence had been sentenced to the mandatory-minimum sentence; and claims involving binding pleas that were accepted by the court at the change-of-plea hearing.[31]

On December 10, 2021, the Court issued an order that concluded petitioners in the temporal category of claims who alleged Sixth Amendment violations that occurred post-plea or conviction but before sentencing could not rely on *Shillinger*'s per se rule.[32]  Instead, Petitioners

---

[29] *CCA Rec. Lit.*, Doc. 730 (clarified and reconsidered in part on other grounds, *id.*, Doc. 784).

[30] *Id.*  (citing 411 U.S. 258 (1973)).

[31] *CCA Rec. Lit.*, Docs. 730, 784.

[32] *Id.*, Doc. 1034.

in this temporal category must demonstrate prejudice, that is, "a realistic possibility of injury to [the defendant] or benefit to the [government]."[33]

### D.    Recordings in this Case

Upon arriving at CCA, Petitioner signed several documents acknowledging that telephone calls that he made from CCA may be monitored and recorded and advising him that calls with his attorney were subject to being monitored unless he followed the privatization procedure in place to make an unmonitored call.  While Petitioner was detained at CCA, he called his attorney to discuss his case.

In the *Black* case, the government surrendered to the Court recordings and derivative evidence of audio calls from CCA that were in its possession, including the recordings of the calls in Petitioner's case.  Copies of the recordings were provided to the FPD on January 9, 2019. The FPD reviewed six recordings of Petitioner speaking with Scherff and Rokusek from CCA between July 5, 2013 and October 15, 2014.[34]

Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communications, verifying that during these calls, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Scherff and Rokusek.[35]  Petitioner also provided sworn declarations from Scherff and Rokusek, stating that any conversation with Petitioner was related to legal advice or strategy sought by Petitioner, and while they were aware that calls were subject to monitoring or recording for security purposes, they did not consent to such recordings being dispensed or made available to prosecutors.[36]

---

[33] *Id.*; *see Shillinger v. Haworth,* 70 F.3d 1132, 1142 (10th Cir. 1995) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)).

[34] *CCA Rec. Lit.*, Doc. 205-2 at 224.

[35] *Id.*

[36] *Warren  v. United States*, 19-2220-JAR, Docs. 11-1, 11-2.

Pursuant to the Court's Order, Petitioner supplemented the record with a sworn statement addressing the issue of waiver with respect to his audio-recordings claim.[37]  He avers that he received a copy of  the Inmate Handbook and Call Monitoring Sheet but did not read it before he placed the attorney-client calls, that he did not understand that by signing he was consenting to the monitoring and/or recording of his attorney-client calls unless he took certain steps, or that he was consenting to CCA giving the recordings to the USAO and its agents.  Petitioner further avers that at the time he placed the calls listed on the privilege log, he did not believe that the recorded preamble applied to attorney-client calls, that the written warning signs placed on or near the telephone applied to attorney-client calls, that his attorney-client calls were subject to monitoring or recording, or that the USAO or its agents could obtain recordings of his attorney-client calls from CCA.

Petitioner was prosecuted by former SAUSA Erin Tomasic and AUSA Dave Zabel, who denies that he listened to the audio recordings during the pending underlying case.[38]  Zabel confirmed that he was aware that Tomasic requested audio recordings of phone calls Petitioner made from CCA, but that he was not involved in this process and was never told by Tomasic that she obtained calls between Petitioner and his counsel.

After the government objected to Petitioner's privilege log, the Court reviewed the audio recordings *in camera*.  At the beginning of each call, a recorded preamble states the balance of Petitioner's pre-paid call account and the following language: "This is a collect call from an inmate at CCA-Leavenworth Detention Center.  This call is subject to recording and monitoring."  There is no discussion of this preamble between Petitioner and counsel in any of

---

[37] *Id.*, Doc. 10-1.

[38] *Id.*, Doc. 6-1.

the calls listed in the privilege log, nor any statements acknowledging the warning or evincing awareness that the calls were being recorded during their conversations.  As set out in the privilege log, the calls include discussions relating to legal advice or strategy, including plea negotiations, discussion with the prosecution, potential motions, and factors that might impact Petitioner's sentence.  In light of the analysis below, the Court does not reach the issue of whether Petitioner waived the attorney-client privilege and/or his Sixth Amendment rights with respect to these calls.[39]

## II.     Discussion

Petitioner's claim is in the temporal category of motions alleging both pre- and post-plea/pre-sentencing Sixth Amendment violations.  Petitioner falls in a sub-category of these claims involving a guilty plea without a written plea agreement.  Two recent decisions by the Tenth Circuit Court of Appeals control this Court's analysis of Petitioner's claim.  The Court first discusses his pre-plea violation, then turns to his pre-sentence violation.

### A.     *Tollett*

Petitioner is one of many petitioners in this consolidated matter who allege pre-plea Sixth Amendment violation claims, including Matthew Spaeth, whose pre-plea claim was dismissed by this Court as foreclosed by the rule in *Tollett v. Henderson*.[40]  In *Tollett*, the United States Supreme Court rejected a pre-plea constitutional challenge where the defendant failed to show that the violation rendered his guilty plea involuntary and unknowing.[41]  Many of these petitioners, including Mr. Warren, declined the opportunity afforded by the Court to amend their

---

[39] This issue is pending before the Tenth Circuit in a separate related § 2255 proceeding, *United States v. Hohn*, Nos. 19-cv-2491-JAR, 12-cr-20003-JAR-3, 2021 WL 5833911 (D. Kan. Dec. 9, 2021), *appeal filed*, No. 22-3009 (10th Cir. Jan. 24, 2022).

[40] 411 U.S. 258, 266 (1973).

[41] *Tollett*, 411 U.S. at 266.

§ 2255 motions to seek relief under *Tollett* or to allege a post-plea violation, and acknowledged that by doing so, they rendered their pre-plea Sixth Amendment claims vulnerable to dismissal.[42] The Court deferred ruling on Petitioner's § 2255 motion pending the outcome of Mr. Spaeth's appeal.[43]

On June 12, 2023, the Tenth Circuit Court of Appeals affirmed this Court's ruling in *Spaeth*.[44]  The Tenth Circuit ruled: (1) the carve-out provision in Spaeth's unconditional standard plea agreement did not constitute a waiver of the government's right to raise, or create an exception to, the rule of law in *Tollett*, and because Spaeth had not met his burden under *Tollett* to vacate his unconditional guilty plea, this Court did not err in ruling that *Tollett* bars his Sixth Amendment challenge;[45] (2) Spaeth's reliance on the per se Sixth Amendment violation rule in *Shillinger* is misplaced because that case did not concern *Tollett*'s guilty-plea situation and "has nothing to do with whether a guilty plea is voluntary or knowing";[46] and (3) *Tollett* precludes Spaeth from challenging his sentence based on an alleged pre-plea Sixth Amendment violation.[47] The court concluded:

> We abide by several principles that the Supreme Court made transparent 50 years ago.  When a defendant voluntarily and knowingly pleads guilty, the defendant acknowledges that unconstitutional conduct preceding the guilty plea is irrelevant to the admission of factual guilt.  As a result, we do not assess the merits of pre-plea constitutional claims but instead ask whether

---

[42] *CCA Rec. Lit.*, Doc. 867; *see Hill v. Lockhart*, 474 U.S. 52, 58–60 (1985) (adopting two-part test for ineffective assistance of counsel claim in the plea context: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

[43] *See Spaeth v. United States*, No. 19-2413-JAR-JPO, Docs. 3, 7, 8; *CCA Rec. Lit.*, Docs. 730, 785, 922.

[44] *United States v. Spaeth*, 69 F.4th 1190 (10th Cir. 2023).  The mandate issued August 21, 2023.

[45] *Id.* at 1204–08.

[46] *Id.* at 1211.  The court declined to decide "what effect any per se presumption of a Sixth Amendment violation might have in applying the *Hill* prejudice standard—a reasonable probability that the defendant would not have pleaded guilty absent the deficient performance."  *Id.*

[47] *Id.* at 1212–13.

ineffective assistance of counsel caused defendants to enter their
guilty pleas involuntarily and unknowingly. *Tollett* and its
progeny tell us how to answer that question: challengers must
show ineffective assistance of plea counsel. Because Spaeth does
not even contend that his counsel performed deficiently, or that
such deficient performance prejudiced him by depriving him of a
trial right he would have chosen, we conclude that Spaeth's § 2255
motion must be dismissed.[48]

The Tenth Circuit's ruling in *Spaeth* compels dismissal of Petitioner's § 2255 motion

based on the five audio recordings of attorney-client phone calls he placed from CCA between

July 5 and December 2, 2013. These recordings were made and obtained by the government

before Petitioner entered his guilty plea on January 24, 2014. Petitioner challenges both his

conviction and his sentence based on this alleged pre-plea Sixth Amendment violation by the

government. Like Mr. Spaeth, Petitioner relies on the per se prejudice rule in *Shillinger* and does

not attempt to meet the applicable *Tollett* standard for showing that ineffective assistance of

counsel caused him to enter his plea involuntarily and unknowingly. He is also precluded from

challenging his sentence based on any alleged pre-plea violation.

**B.    *Orduno-Ramirez***

The sixth recorded phone call between Petitioner and Scherff's assistant took place on

October 15, 2014. The government acknowledges that this call was made and accessed after

Petitioner entered a guilty plea on January 24, 2014, and before he was sentenced on November

19, 2014.[49]   Thus, any alleged Sixth Amendment violation could not have occurred until after

Petitioner's plea but before he was sentenced.

The Court's December 10, 2021 Order concluded petitioners in the temporal category of

claims who alleged Sixth Amendment violations that occurred post-plea or conviction but before

---

[48] *Id.* at 1213.

[49] *CCA Rec. Lit.*, Doc. 809-1 at 12.

sentencing could not rely on *Shillinger*'s per se rule.[50]  The Tenth Circuit Court of Appeals affirmed this Court's decision in another § 2255 proceeding raising a similar Sixth Amendment violation claim involving video recordings.  In *United States v. Orduno-Ramirez*, the Tenth Circuit declined to categorically extend a conclusive presumption of prejudice to post-plea or -conviction intrusions into attorney-client communications.[51]  After noting this Court held that the petitioner must show prejudice in such cases, the Tenth Circuit did "not decide which party bears the burden because the Government has shown that Mr. Orduno-Ramirez has not been prejudiced, and he does not contend otherwise."[52]  The court found that the government showed that the intrusion did not cause Mr. Orduno-Ramirez prejudice, and Orduno-Ramirez did not contend that he was prejudiced, relying instead on the presumption of prejudice in *Shillinger*.[53] The court further found that the government showed that the lead prosecutor did not view the videos, the soundless video recordings provided no strategic value to the prosecution, and the record reveals no irregularity in the petitioner's sentencing proceedings.[54]

The Tenth Circuit also denied Orduno-Ramirez's request to order supplemental briefing on the burden-of-proof question.[55]  In a separate related case on appeal, however, the court recently agreed to address the issue of "[w]hether the district court erroneously required [Petitioner] to demonstrate prejudice to establish his Sixth Amendment claim."[56]

---

[50] *CCA Rec. Lit.* Doc. 1034.

[51] 61 F.4th 1263, 1273–77 (10th Cir.) (discussing *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995)), *cert. denied*, ---S. Ct.---, 2023 WL 7287223 (Nov. 6, 2023).

[52] *Id.* at 1276.

[53] *Id.* at 1277.

[54] *Id.*

[55] *Id.* at 1277 n.24.

[56] *United States v. Valdez*, No. 22-3025 (10th Cir. Sept. 12, 2023).

Although the question of whether the petitioner must show prejudice or whether the government must show lack of prejudice is an open question, the Court easily finds that Petitioner has not been prejudiced.  While the December 10, 2021 Order held that Petitioner bore the burden to show prejudice resulting from the intentional intrusion into his attorney-client communications, the government introduced evidence and arguments showing that he suffered no prejudice.  As was the case in *Orduno-Ramirez*, the government submitted an affidavit from the prosecutor stating that at no time during his involvement in the case did he listen or become privy to any audio recordings of Petitioner at CCA.

Further, although the parties had a contested hearing, Petitioner's sentencing bears no indicia of a tainted proceeding.  Like Orduno-Ramirez, Petitioner pled guilty without a plea agreement.  The government unsuccessfully advocated for a sentence of 210 months' imprisonment to be imposed consecutively to a sentence of 60 months' imprisonment in the earlier drug case.  After an evidentiary hearing, the court adjusted the total offense level from 35 to 33, which resulted in an advisory Guidelines range of 168 to 210 months.  The court sentenced Petitioner to 180 months' imprisonment on all four counts, followed by a consecutive 36 months' imprisonment on the revocation matter.  The government did not cross-appeal the court's findings or reduced sentencing calculations.  The prosecution bore all the hallmarks of a reasoned advocate for the government and not an antagonist leveraging inside information.

The Court agrees that none of the information the Court, the United States Probation Office, or the government relied on for sentencing could have come from the October 2014 audio recording.  As noted, the Court listened to the recording *in camera*, and finds that it presented no strategic value to the prosecution.  That conversation was between Petitioner and Scherff's assistant, where she promised to relay Petitioner's questions regarding whether Scherff would

visit him at CCA prior to his sentencing hearing and whether Scherff's research had uncovered any case law in support of a lower sentence.  Thus, even assuming the government bears the burden of proving lack of prejudice, it has met that burden because the record reveals no irregularity in or threat to the reliability or fairness of Petitioner's sentencing proceedings, where he received a sentence at least 30 months less than the advisory Guidelines range originally calculated in the PSIR.  Because the government has shown the intrusion did not cause prejudice—and Petitioner does not contend that he was actually prejudiced—there is no Sixth Amendment violation and no ground for relief under § 2255.[57]

## III.   Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[58]  If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[59]  For the reasons explained above, Petitioner has not made a substantial showing on either prong and the Court therefore denies a COA.

---

[57] *Orduno-Ramirez*, 61 F.4th at 1266.

[58] 28 U.S.C. § 2253(c)(2).

[59] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Arrick Warren's Supplemental Motion to Vacate and Discharge with Prejudice under 28 U.S.C. 2255 (Doc. 129) is **dismissed in part and denied in part** without an evidentiary hearing.  Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: <u>November 14, 2023</u>

                  S/ Julie A. Robinson
                 JULIE A. ROBINSON
                 UNITED STATES DISTRICT JUDGE